## CHARLOTTE BOYD *v.* JOHN GANDALL.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JANUARY 3, 1898.    DECIDED FEBRUARY 9, 1898.

JUDD, C.J., FREAR AND WHITING, JJ.

It is not contrary to Article 88 of the Constitution for a Judge to preside over a jury on the second trial of a case, where on the first trial, the same Judge presiding, there was a disagreement of the jury and the Judge had given no judgment.

Questions on the admissibility of certain evidence stated and considered.

Courts should not allow counsel to make comparisons and comments on the acts of jurors in previous cases of the same character as the case on trial. The action of a jury in a former case affords no rule for their action in the case before them.

Bribery cannot be inferred from the expenditure by a juror who is a poor man, in improvements on his premises, without other incriminating evidence.

Quere; if affidavits of jurors of their discussions are admissible?

OPINION OF THE COURT BY JUDD, C.J.

This is an action for breach of promise of marriage, tried before Judge Perry and a jury at the last August term of the First Circuit Court, resulting in a verdict for defendant. It is the second trial of the case, a former trial resulting in the disagreement of the jury. Judge Perry had presided at the former trial and the first point in plaintiff's bill of exceptions is that the presiding of Judge Perry in the second trial was in violation of Article 88 of the Constitution which reads: "No Judge or Magis-

trate shall sit on appeal or a new trial in any case in which he may have given a previous judgment." Judge Perry had given no judgment on the previous trial. We think that he was not disqualified.

The second exception is to the court's refusing to allow a witness for plaintiff, Robert Boyd, to state with whom he consulted after he had had an interview with plaintiff on the subject of her marriage with defendant. We know of no ground upon which this evidence can be held admissible.

The third exception. The court allowed defendant's counsel to ask a witness on cross-examination, this question; "You believe a man ought to be pretty sick, don't you, to have kept as mum as Gandall did up to Tuesday morning?" Counsel for plaintiff objected to the question because a mere opinion was asked for and the witness was not an expert. The witness had said that as Gandall had come up to Honolulu from his home on Kauai and had not been to see her, he must be seriously ill. This seems to us to be allowable, in order to test her credibility as a witness, and was legitimate cross-examination.

Exception four. The court disallowed evidence on cross-examination (not responsive to the question) as to whom a witness had told of what he had just witnessed between the parties to the suit. This was correct. A witness cannot be allowed to strengthen his evidence by saying that he told others of the occurrence testified to.

Exceptions five and six. The defendant while on the stand was allowed by the court under objection by the plaintiff's counsel, to say whether, on his return home after the imputed engagement, he had discussed marriage or Miss Boyd, the plaintiff, with his half brother.

The plaintiff had given testimony that she had received a message on the subject of marriage with plaintiff from a person who said she had been sent on this errand by defendant's half brother: and that defendant in a conversation with plaintiff had admitted knowledge of the messenger and her errand.

Defendant's denial that he had ever talked with his half brother on this subject was admissible and relevant and tended to contradict plaintiff's testimony that he authorized the message.

Exception seven. A witness for plaintiff had made certain specific statements reciting what defendant had said on a certain occasion. Defendant's counsel repeated this testimony verbatim and asked his client if he had said this. We do not find this method of procuring a denial to be objectionable.

Exception eight. A witness, Testa, who publishes a newspaper was called by plaintiff in rebuttal. He gave evidence that defendant had made admissions tending to show an engagement to marry between himself and plaintiff. An item announcing the engagement had appeared in witness' newspaper. It was objected to that Testa was allowed to testify that the object of defendant's visit to Testa's office was to have him insert in his newspaper, a denial of the fact of engagement. We see no error in this, for it was evidence tending to show the improbability of Testa's testimony in that defendant would not be likely to admit his engagement and at the same time order a denial of it to be published.

Exceptions nine and ten are to the court's allowing defendant to deny some immaterial statements in rebuttal of what it was alleged he had said in conversation. They could not have had any effect on the jury, and we pass them without further comment.

Exceptions eleven to fourteen involve the question of the latitude to be allowed to counsel in remarks to the jury. The exact remarks of the counsel are not reported, but the record shows that the court felt obliged to caution Mr. Rosa several times not to draw comparisons between the case before them and other previous breach of promise cases, and finally directed the jury not to regard a statement of Mr. Rosa that "a case (of this character) was tried in this country which was considered as a conspiracy and ten thousand dollars was awarded." This

action of the court was proper.  The way in which a jury in another case has acted affords no rule upon which the jury in the case before them should act.

On the exception that the verdict of the jury for defendant was contrary to evidence, the weight of evidence, etc., we find that the evidence sent up affords no clear and satisfactory proof of an engagement to marry.  But there being some evidence of it, which was left to the jury, their finding that it was not sufficient we cannot disturb.

The plaintiff after verdict moved for a new trial on the ground of misconduct of the jury.  An affidavit was produced from a juror that he heard three of the jury, naming them, say that Robert Boyd, a witness and brother of plaintiff was not to be credited for he was making up a false case in order to get money.  This is denied by the impeached jurors themselves. We do not understand how these affidavits were admissible at all.  Generally affidavits as to statements made by the jurors in their discussions are not admissible.  But it is said that the statements were made while in the box though the affidavits do not say so.  We rest upon the denials made.

A second ground is that the receipt of a bribe should be *inferred* from juror Sam Stone's actions, in that, though a poor man and dependent upon daily wages and without steady employment, he, soon after the verdict bought furniture, fixed up a fence about his premises, etc.  Counter affidavits were filed accounting for the money from which the repairs were made. The largest amount that of $31.00 for furniture was paid by Stone some time before this trial.  It is rather too violent an inference upon which to impute bribery to a party litigant, from the fact that a juror who is a poor man, after verdict improves his premises.  Though in some cases it is proper to show extravagant and unusual expenditures as tending to show an unlawful possession of money, of itself and without other inculpatory evidence it is not sufficient to prove crime.

The exceptions are overruled.

*A. G. M. Robertson* and *A. Rosa* for plaintiff.

*Kinney & Ballou* and *C. Brown* for defendant.